RALPH J. QUALE, Plaintiff, v. CHARLES McDANIELS and Others,
Defendants.

Supreme Court, Chautauqua County, July 2, 1926.

**Equity — specific performance — contract whereby plaintiff, as mortgagee, and defendants, as mortgagors, were to sell building lots " at such prices and on such terms as all parties agree upon " is one for mutual effort in business enterprise — equity cannot enforce said contract — plaintiff has no rights under contract but is entitled to have mortgage, executed prior thereto, paid — evidence does not show plaintiff practiced fraud upon defendants — contract not void for usury.**

A contract providing for a division of profits expected from the sale of building lots, in which the plaintiff, as mortgagee, and certain of the defendants, as mortgagors, have an interest, whereby each party was " to sell such lots, and at such prices and on such terms as all parties agree upon," calls for mutual effort and co-operation in a joint business enterprise which cannot be enforced in equity, since to enforce it would require a decree directing the parties to do in a certain manner what they themselves have agreed to do in a manner left open for future agreement; equity cannot specifically direct the performance of a contract which is not sufficiently definite as to what the parties are required by its terms to do to enable a court to give directions.

Accordingly, in an action to determine the rights of the plaintiff under a mortgage given him by the subscribers to the aforesaid contract, which was executed subsequently to the mortgage, and also under said contract, it must be adjudged that plaintiff's only right is to have the mortgage paid according to its terms, since said contract is void and unenforcible.

Plaintiff practiced no fraud nor duress in obtaining the contract and furnished good consideration for all the benefits received.   Consideration for the contract may be found in plaintiff's forbearance to sell or foreclose the mortgage, his agreement to release lots, as sold, from the lien of the mortgage, and the efforts put forth in bringing about the laying out of the roads to benefit the joint venture and aid in making the lots more marketable.

The contract is not void for usury since the evidence shows that when the defendants found themselves in a situation where they could not make their payments under the mortgage, plaintiff undertook in a conscionable manner to aid them to save their investment, and the profit, which he sought for himself, was reasonable in amount.

ACTION to determine the rights of the plaintiff under a mortgage and under an agreement entered into subsequent to the mortgage.

*Emil F. Lein* [*Frank Harding* of counsel], for the plaintiff. .

*Glenn W. Woodin*, for the  defendants.

CROSBY, J.   This action is brought to secure from this court of equity a determination of the rights of the plaintiff under a mortgage given to him by Charles and Wesley McDaniels and also under a contract in writing made and entered into subsequently to the

mortgage, between the parties to said mortgage. The complaint also demands that when those rights are determined the court appoint a receiver of the land mortgaged so that the same may be sold and the proceeds divided equitably among the parties according to their respective· rights as determined by the court.

The plaintiff was sworn as a witness in his own behalf and gave the only testimony offered in the case. The facts are simple. Charles and Wesley McDaniels purchased from plaintiff a farm located on the shore of Lake Erie, and gave back a mortgage for nearly the whole purchase price. The design was to divide the lake frontage into building lots and sell them off at a profit. Sales were slow, the mortgagors got behind in their payments as they fell due under the mortgage, and the parties entered into negotiations that resulted in the following contract in writing:

" SILVER CREEK, N. Y.

" This agreement made this seventh day of Sept. 1923, between Chas. & Wesley McDaniels of Silver Creek, N. Y. of the first part and Ralph J. Quale of Buffalo, N. Y. of the second part. In consideration of the promises hereinafter made and the receipt of one dollar paid each to the other herewith acknowledged.

" Title to land to remain the same as now in first party's hands. Mortgage to be held in second party's hands and not to be transferred or foreclosed during its life. Crops to be owned by first party and they to pay taxes, also interest on balance of mortgage.

" Three fourths receipts from sales of land to apply on mortgage until paid, one fourth for improvements, leaving out house and lot, about 200 feet frontage and lot 100 feet for Walker also 100 ft. lot to Quale next to house lot — then first party to receive two thirds of receipts from sales, second party one third of proceeds after mortgage paid until all sold.

" Each party to sell such lots and at such prices and on such terms as all parties agree upon.

" Second party to release lots from mortgage as fast as sold.

" Advertising to be done under the name of McDaniels and McDaniels.

" No other obligations one to the other.

" This agreement made this 7th day of Sept. 1923 in lieu of similar agreement made in Pencil Aug. 27/1923.

|                    | " Signed.          | CHAS. McDANIELS   |
| " Witness          |                    | WESLEY McDANIELS  |
|                    | " LOUISE McDANIELS.| RALPH J. QUALE "  |

Plaintiff asks to have his rights determined under this contract and the mortgage. The contract was never recorded and cannot

be recorded because its execution was not acknowledged before a notary public. The mortgagors (defendants McDaniels and McDaniels) subsequently sold the farm to defendants Stewart and Dickinson. The complaint alleges and the answer denies that Stewart and Dickinson had actual knowledge of the existence of this unrecorded contract at the time they purchased the land. The evidence shows they had such knowledge.

The answer of defendants McDaniels and McDaniels sets up two defenses labeled counterclaims. *First,* that the contract dated September 7, 1923, was procured by plaintiff by means of fraud and duress and without any consideration. *Second,* that the contract was a scheme of plaintiff for obtaining an usurious rate of interest in his loan, and is, therefore, void. The answer also alleges that defendants have made and kept good a tender of the whole amount of the mortgage. The mortgage, by its terms, is payable " within ten years." Plaintiff's reply denies the tender. I am inclined to think that plaintiff's denial, in the reply, of a tender, is a negative pregnant. It denies " that tender of the amount due upon the bond and mortgage * * * was ever made." Defendants' answer alleges specifically and in minute detail the date of the tender, the exact amount tendered, the manner of making and circumstances surrounding the tender, demand for execution of a discharge of the mortgage, etc. I think perhaps the plaintiff's denial of tender in his reply was his manner of denying that all that was due him (under the contract as well as the mortgage) was tendered. The matter is not of great importance in view of my decision in the case. If the tender was made the plaintiff can accept it, and if not he can foreclose his mortgage. The minutes of the trial have not been transcribed but I believe that upon the trial it was stipulated that defendants had made a tender and kept it good.

I must find against the defendants upon most of the vital questions of fact raised by the answer. Plaintiff practiced no fraud nor duress in obtaining the contract, and plaintiff furnished a good consideration for all the benefits he received or could receive under the contract. The consideration consisted of the following: (1) Plaintiff's forebearance to sell or foreclose the mortgage (as per terms of contract itself). (2) Plaintiff's agreement to release lots, as fast as sold, from the lien of his mortgage (as per terms of contract itself). (3) Plaintiff's considerable effort in securing roads to be laid out to benefit the joint venture and aid in making the lots more marketable (as shown by undisputed testimony). (4) In addition, the contract recites a consideration.

And I cannot agree with defendants' contention that the contract

is void for usury. True, contracts of this kind between debtor and creditor must be closely scrutinized. But these defendants found themselves in a situation where they could not make their payments and the plaintiff undertook, in a manner that seems to me entirely conscionable, to help them save their investment. The profit he sought for himself was reasonable in amount and he furnished adequate considerations for all he could hope to realize. It required a great strain on the imagination to see where plaintiff overreached or sought to overreach in the least.

But plaintiff must fail for a reason that has apparently never occurred to anybody connected with this case. And .yet the reason is perfectly obvious. How can an equity court make and enforce any decree that will define and secure for plaintiff his rights under a contract which, by its very terms, calls for mutual effort and co-operation in a joint business enterprise? Here is a contract that provides for a division of profits expected from the sale of lots in which both parties have an interest (one as mortgagor and one as mortgagee) and " *Each* party to sell *such lots*, and *at such prices* and on *such terms* as *all parties agree upon.*" Can a court of equity decree that parties go forth and *agree?* The contract is not sufficiently definite as to what the parties must do to enable a court to give directions. Too much is left for the parties themselves to work out in a spirit of mutual trust and confidence. It cannot be that I am mistaken about this. Had the idea been advanced in a brief I should have accepted it without hesitation. But at some expense of effort I have looked up some authorities.

*Foot* v. *Webb* (59 Barb. 38) is a case in which a court of equity refused to decree specific performance of a contract to sell certain land " in consideration of the sum of Seven Hundred Dollars. To be conveyed *as soon* as the party of the second part *secures* the payment of the same," on the ground that the parties had not agreed definitely enough on the *time* when the security was to be given, nor the *nature and amount* of the security, nor the *terms* as to payment.

If the contract in the case at bar did not purport to contain all the stipulations of the parties it might be susceptible of parol proof to aid us in getting at their intention; but the contract is complete and it is perfectly clear what the parties intended. They contracted to enter into a joint venture and to leave many important details of the business to be agreed upon as they proceeded with the business.

Other cases throwing light on the question here involved are: (*Stanton* v. *Miller,* 58 N. Y. 192, 200; *Hopedale Electric Co.* v. *Electric Storage Battery Co.,* 132 App. Div. 348; affd., 198 N. Y. 588.) Th

last case clearly points out the different rule applied in equity cases from that followed in law actions for damages. ·

Even at law contracts are unenforcible where their terms are not sufficiently definite to enable the court to determine what obligations the parties have assumed. (*Barker* v. *O'Grady*, 163 N. Y. Supp. 594; *Varney* v. *Ditmars*, 217 N. Y. 223; *Lambert* v. *Hays*, 136 App. Div. 574; *Howie* v. *Kasnowitz*, 83 id. 295; *Bluemner* v. *Garvin*, 120 id. 29; *Mackintosh* v. *Thompson*, 58 id. 25; *Mackintosh* v. *Kimball*, 101 id. 494; *Canet* v. *Smith*, 173 id. 241.)

Enough authorities have been cited to illustrate the principle involved. An equity court cannot by decree direct parties to do, in a certain manner, what the parties themselves have agreed to do in a manner left open for future agreement. Plaintiff's interest in the contract here involved depended upon what he and defendants agreed to, as to the lots to be sold and the prices and terms upon which they were to be sold.

The contract is void and unenforcible, and the plaintiff's interest is adjudged to be his right to have his mortgage paid according to its terms; and he may accept the tender made by defendants.

Without costs to either party.

I have passed upon requests to find submitted by defendants denying most of the vital ones. If their counsel desires to present other findings drawn in accordance with the suggestions herein made I will sign them.